*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1369**

In re the Marriage of:

Andrew Michael Larson, petitioner,
Appellant,

vs.

Julie Christine Larson,
Respondent.

**Filed May 13, 2024**
**Affirmed in part, reversed in part, and remanded**
**Johnson, Judge**

Sherburne County District Court
File No. 71-FA-17-176

Christine Murphy, Cooper Law, L.L.C., Minneapolis, Minnesota (for appellant)

Julie Christine Larson, Zimmerman, Minnesota (*pro se* respondent)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and Klaphake, Judge.[*]

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

Andrew Michael Larson moved to modify the amount of child support he pays to his former wife, Julie Christine Larson. The district court granted his motion but increased

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the amount of his monthly payment. We conclude that the district court clearly erred in its finding of Andrew's gross income and, consequently, erred in its calculation of the amount of child support. We also conclude that the district court did not err in its rulings on two other motions filed by Andrew. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

Andrew and Julie were married in 2002. They have three joint children, one of whom is still a minor. Andrew petitioned for dissolution of the marriage in July 2016. Andrew and Julie stipulated to a judgment and decree, which the district court approved in May 2017.

At the time of the dissolution, two of the parties' children were minors. The stipulated decree awarded each party joint legal custody and joint physical custody of the two children. The stipulated decree provided that Andrew would pay Julie $200 per month in basic child support until the older of the two children reached the age of 18 or completed high school, at which time child support would be recalculated.

In February 2023, Andrew moved to modify the amount of child support. Both Andrew and Julie submitted affidavits concerning their incomes. In addition, Andrew submitted an affidavit of an accountant who provides accounting services to a small business of which Andrew is a co-owner. The parties agreed that Julie's gross monthly income is $5,456 but disputed the amount of Andrew's gross monthly income. Andrew stated in an affidavit that his gross monthly income for child-support purposes is $6,804; Julie took the position that Andrew's gross monthly income is $12,742. The district court

2

conducted two hearings on Andrew's motion in February and March of 2023. Neither party presented any witness testimony. Counsel presented oral arguments at the second hearing and submitted letter briefs afterward.

In July 2023, the district court filed an order with findings of fact and conclusions of law. The district court found that Andrew's gross monthly income for child-support purposes is $12,927. Given that finding and the parties' agreement concerning Julie's gross income, the district court determined that Andrew's share of combined parental income for child-support purposes is 70 percent, which results in a child-support obligation of $348 per month, an increase from the pre-existing obligation of $200 per month. Accordingly, the district court granted Andrew's motion to modify but increased the amount of his child-support obligation. Andrew appeals.

**DECISION**

**I. Child Support**

Andrew first argues that the district court erred by finding that his gross monthly income is $12,927 and by ordering him to pay child support of $348 per month.

To determine the existence and amount of a basic child-support obligation, a district court must determine the gross income of each parent. Minn. Stat. §§ 518A.29, .34(a), (b)(1) (2022). Gross income includes income derived from the operation of a business. Minn. Stat. § 518A.29(a). For these purposes, income from the "operation of a business . . . is defined as gross receipts minus costs of goods sold minus ordinary and necessary expenses required for . . . business operation." Minn. Stat. § 518A.30 (2022). In applying this statutory formula, "the district court must first identify the business's gross receipts,

3

cost of goods sold (if applicable), and ordinary and necessary expenses, and then apply the formula by subtracting the cost of goods sold and ordinary and necessary expenses from the business's gross receipts in order to arrive at the parent's income from . . . operation of a business." *Haefele v. Haefele*, 837 N.W.2d 703, 711 (Minn. 2013). If a parent owns only part of a business, "the district court must calculate the amount of business income attributable to that parent's ownership interest." *Id.* at 711 n.4. This court applies a clear-error standard of review to a district court's finding of gross income. *Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn. App. 2015) (quotation omitted), *rev. denied* (Minn. Dec. 15, 2015).

Andrew is a co-owner, with his father, of an automotive-repair business, which is a closely held subchapter S corporation. Andrew owns 60 percent of the shares of the corporation. The corporation recognized ordinary net income (*i.e.*, profit) of $71,724 in 2022, of which the corporation allocated to Andrew 60 percent, or $43,034, which is reflected on his K-1 form. During 2022, the corporation also paid Andrew a salary of $38,618, for which he received a W-2 form. The sum of Andrew's 60-percent share of the corporation's net income and his salary is $81,652 per year, or $6,804 per month.

**A.**

Andrew first contends that the district court erred by including $47,783 of shareholder distributions in its finding of his income from the operation of a business. Andrew contends that the district court misapplied section 518A.30 and *Haefele* and effectively double-counted his 60-percent share of the corporation's profit in 2022 by adding together his share of net income and the distributions paid to him during the year.

4

Andrew's contention has merit. The supreme court expressly stated in *Haefele* that the "amount the shareholder receives is not the relevant inquiry under section 518A.30." *Haefele*, 837 N.W.2d at 714. Instead, "the statute instructs district courts to calculate income from . . . operation of a business using the formula provided in section 518A.30 itself." *Id.* at 711. To reiterate, applying the statutory formula requires a district court to "first identify the business's gross receipts, cost of goods sold (if applicable), and ordinary and necessary expenses, and then apply the formula by subtracting the cost of goods sold and ordinary and necessary expenses from the business's gross receipts in order to arrive at the parent's income from . . . operation of a business." *Id.* In *Haefele*, the supreme court concluded that the district court erred because it "erroneously focused on the amount of money *distributed* by" a closely held corporation to the parent who owned shares of the corporation. *Id.* at 712.

Here too, the district court clearly erred by including shareholder distributions in its calculation of Andrew's income from the operation of a business. Shareholder distributions are not part of the statutory formula for calculating income from the operation of a business pursuant to Minn. Stat. § 518A.30. The shareholder distributions that Andrew received in 2022 reflect the corporation's decisions, in both 2022 and in prior years, about how much of its profits to allocate to retained earnings, how much to distribute to shareholders, and when to make shareholder distributions. As a result of this error, the district court's finding overstates Andrew's income from the operation of a business by $47,783 per year, or $3,982 per month.

5

**B.**

Andrew also contends that the district court erred by not subtracting ordinary and necessary expenses from the corporation's gross receipts, as required by the statutory formula in section 518A.30.

At the second hearing on Andrew's motions, the parties presented oral arguments by referring to the corporation's accounting records and income-tax returns for 2022. Those records show that the cost of goods sold was $196,310 and that other expenses amounted to $260,539. Julie's attorney argued that it was necessary to "add back in any expenses that are not for the business," and she proceeded to identify several categories of expenses that, she asserted, are not proper business expenses. The district court adopted Julie's arguments and either eliminated or reduced certain types of expenses allocated to Andrew, thereby increasing his income.

**1.**

Julie's attorney urged the district court to not subtract from gross receipts 60 percent of the corporation's expenses for auto insurance on the ground that the expenses were for "personal use because you're required to have auto insurance on your vehicles so that's normal to add auto insurance back in." Likewise, Julie's attorney urged the district court to not subtract 60 percent of the corporation's expenses for health-insurance expenses. Similarly, Julie's attorney urged the district court to not subtract 30 percent of the corporation's expenses for gas, oil, and maintenance, stating that "some of that is going to be for personal use." The district court adopted Julie's arguments.

The statute defining income from the operation of a business provides, in part, "The person seeking to deduct an expense, including depreciation, has the burden of proving, if challenged, that the expense is ordinary and necessary." Minn. Stat. § 518A.30. Andrew submitted an affidavit executed by the accountant who prepared the corporation's 2022 financial statements and income-tax returns and also had provided accounting services to the corporation for 20 years. The accountant stated that, in preparing the 2022 financial statements, she accounted for "the portion of the expense that is directly related to the business" and that "Mr. Larson's personal expenses are not included in the deduction."

Julie did not introduce any evidence to contradict the accountant's affidavit or to support her argument for not subtracting some portions of certain types of expenses. In fact, Julie did not introduce any evidence whatsoever as to whether the corporation's expenses, which were recognized as deductions for income-tax purposes, were "ordinary and necessary" or were incurred for Andrew's personal benefit. For example, there was no evidence in the record concerning how the corporation's vehicles were used and by whom. Julie's arguments appear to have been based merely on supposition or speculation. The district court did not find that Andrew's evidence was lacking in detail or credibility. In the absence of any evidence contradicting Andrew's evidence or supporting Julie's arguments, the only proper finding is that Andrew satisfied his burden of proving that the corporation's expenses for auto insurance; health insurance; and gas, oil, and maintenance were ordinary and necessary.

Thus, the district court clearly erred by not subtracting those three categories of expenses from the corporation's gross receipts when making findings of Andrew's income

7

from the operation of a business. As a result, the district court's finding overstates Andrew's income by $11,338 per year, or $945 per month.[1]

**2.**

The corporation's financial statements reflect depreciation expenses of $20,220 in 2022. The statute defining income from the operation of a business provides, in part, "Specifically excluded from ordinary and necessary expenses are amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses . . . ." Minn. Stat. § 518A.30. Julie's attorney referred to this statutory provision in urging the district court to exclude 60 percent of the corporation's depreciation expenses. The district court adopted Julie's argument, which increased Andrew's income from the operation of a business by $12,133 per year, or $1,011 per month.

The corporation's 2022 income-tax return indicates that an accelerated method of depreciation was used for most of the corporation's depreciating assets. In any particular year, an accelerated method of depreciation could result in either more or less depreciation expense than the straight-line method, depending on the age and useful life of an asset. The district court erred by excluding 60 percent of the corporation's depreciation expenses without any evidence of the specific amount of the accelerated component of the corporation's depreciation expenses or without a calculation of the accelerated component based on the existing evidence of depreciation expenses.

---

[1]The district court did not err by not subtracting $2,223 in cell-phone expenses. In Andrew's request for reconsideration, he conceded that the district court's treatment of cell-phone expenses accurately accounts for the fact that the corporation provided him with a cell phone that was "available for personal use."

## C.

In sum, the district court erred in its finding of Andrew's income from the operation of a business by including shareholder distributions of $47,783 per year, for the reasons stated above in part I.A.; by not subtracting various expenses of $11,338 per year, for the reasons stated above in part I.B.1.; and by excluding depreciation expenses of $12,133 per year, for the reasons stated above in part I.B.2. The matter is remanded to the district court for further proceedings. On remand, the district court shall allow the parties to submit additional evidence concerning the accelerated component of the corporation's depreciation expenses in 2022, which is specifically excluded from the statutory formula. The district court shall make an amended finding of the depreciation expenses that should be subtracted from gross receipts pursuant to the statutory formula, shall find Andrew's income from the operation of a business in a manner consistent with this opinion, shall find Andrew's gross income, and shall reconsider Andrew's motion to modify the pre-existing child-support obligation.

## II. Child Care

Andrew also argues that the district court erred by reducing, but not eliminating, a $100 monthly payment that he is obligated to make to Julie pursuant to a stipulated order.

In the judgment and decree, the issue of child-care support was reserved. Two and one-half years later, after engaging in mediation, Andrew and Julie stipulated to an order modifying the decree in four ways. The district court approved the stipulation in December 2019. The fourth provision of the December 2019 stipulated order states as follows:

9

> Child Care Support. Effective and commencing October 1, 2019, petitioner shall pay directly to respondent the sum of $100.00 per month during the school year during any month that respondent provides afterschool care for the joint minor children on petitioner's parenting time days. Said monthly payment shall continue until both joint minor children are fully enrolled in afterschool care on petitioner's parenting time days. Petitioner's child care support shall be paid on the 1st of each month continuing thereafter.

When the district court approved the stipulated order, the parties' two minor children were 16 and 11 years old, respectively. The record reflects that the parties agreed to the $100 monthly payment because both children spent time at Julie's home before and after school on some days for which Andrew was awarded parenting time, which increased Julie's expenses for items such as food that the children consumed while at her home.

In December 2022, Andrew moved to modify the fourth provision of the December 2019 stipulated order on the grounds that "childcare was no longer needed" and that he had assumed responsibility for other child-related expenses that exceed $100 per month. Julie responded by filing an affidavit stating that the need for the payment had not changed. Andrew filed a second affidavit in which he stated that Julie is not at home while the children are there. The district court resolved Andrew's motion by reiterating the original purpose of the stipulated order, by noting that only one child is still a minor, and by reducing the payment by half, from $100 to $50.

On appeal, Andrew contends that he should not be required to pay "childcare support" because no child-care costs are being incurred. He cites a statute captioned "Child Care Support," which governs child-care expenses paid to a "child care provider" and requires "documentation of child care expenses." Minn. Stat. § 518A.40, subds. 1, 3(a)

10

(2022); *see also Beckendorf v. Fox*, 890 N.W.2d 746, 748-50 (Minn. App. 2017); *Jones v. Jarvinen*, 814 N.W.2d 45, 47-48 (Minn. App. 2012).

As far as the record reveals, the $100 payment was not intended to reimburse Julie for payments made to third parties for child-care services. Despite the "child care support" heading, the fourth provision of the December 2019 stipulated order states that Andrew shall make a $100 payment to Julie in any month in which *she* "provides afterschool care for the joint minor children on [Andrew's] parenting time days." The fourth provision of the December 2019 stipulated order did not make any reference to section 518A.40, the statute on which Andrew now relies. Accordingly, section 518A.40 does not apply to Andrew's motion.

Andrew contends further that, although he earlier agreed to make a monthly payment to Julie in addition to his child-support obligation, he no longer agrees to do so. But the stipulated order provides that Andrew "shall pay" Julie the agreed-upon amount if she provides after-school care. Andrew does not contend that Julie is not fulfilling her responsibilities in the manner in which the parties intended when they entered into the agreement. The stipulated order also contains a provision specifying when the monthly payment terminates, but Andrew does not contend that the termination clause has been triggered.

Thus, the district court did not err by not eliminating Andrew's obligation to make monthly payments to Julie pursuant to the fourth provision of the December 2019 stipulated order.

11

### III. Attorney Fees

Andrew last argues that the district court erred by denying his motion for attorney fees. This court generally applies an abuse-of-discretion standard of review to a district court's ruling on a motion for attorney fees. *Haefele v. Haefele*, 621 N.W.2d 758, 767 (Minn. App. 2001), *rev. denied* (Minn. Feb. 21, 2001).

In February 2023, Andrew moved for an award of attorney fees on the ground that Julie had delayed in producing information concerning her income. In its July 2023 order, the district court denied Andrew's motion. The district court reasoned that Julie had produced her W-2 forms and paystubs and was not required to produce additional information because she had no other sources of income.

On appeal, Andrew contends that the district court should have awarded him attorney fees on the ground that Julie was untimely in producing her income-related information. Andrew asserts that he first requested the information in September 2022, that Julie did not respond until February 2023, and that Julie's delay "unreasonably contribute[d] to the length or expense of the proceeding." *See* Minn. Stat. § 518.14, subd. 1 (2022); *see also Buckner v. Robichaud*, 992 N.W.2d 686, 689 (Minn. 2023).[2]

---

[2]Andrew also could have requested attorney fees under the statute that requires a parent to disclose income-related information to the other parent. *See* Minn. Stat. § 518A.28(a), (b), (e) (2022). That statute provides, in relevant part, "If the court finds that a party has violated a . . . statute requiring the party to disclose income or employment information . . . , the court may issue an order requiring compensation and cost and reasonable attorney fees to the party who was wrongfully deprived of the information . . . ." Minn. Stat. § 518A.28(e). Because Andrew has not invoked section 518A.28(e) in the district court or on appeal, we do not consider his entitlement to attorney fees under that statute.

Andrew's contention ignores the fact that his own actions delayed the proceedings. His attorney mistakenly sent the September 2022 request to Julie personally, even though she was represented. Andrew's attorney did not request income-related information from Julie's attorney until November 2022. In addition, the district court continued the first hearing because *Andrew* had not yet produced all of *his* income-related information. Andrew received Julie's income-related information more than one month before the second hearing in late March 2023. Ten days before the second hearing, Andrew executed an affidavit in which he agreed with Julie that her monthly gross income is $5,456. Thus, Andrew cannot demonstrate that any delay by Julie in producing her income-related information prolonged the resolution of his motion to modify child support.

Andrew also contends on appeal that the district court should have awarded him attorney fees on the ground that Julie prolonged the proceedings by making unmeritorious arguments concerning his gross income at the late-March 2023 hearing. But Andrew never filed a motion for attorney fees on that basis. Accordingly, we will not consider the argument for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

Thus, the district court did not err by denying Andrew's motion for attorney fees.

**Affirmed in part, reversed in part, and remanded.**